

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 13, 2021**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: § | |
| § | Case No. 19-41155-ELM |
| MATTHEW GUY LANDGRAF, § | |
| § | Chapter 7 |
| Debtor. § | |

## AMENDED MEMORANDUM OPINION AND ORDER[*]

Before the Court for determination in this case is a summary judgment dispute between Matthew Guy Landgraf (the "**Debtor**"), the chapter 7 debtor, and Areya Holder Aurzada (the "**Trustee**"), the appointed trustee of the Debtor's bankruptcy estate, with respect to the propriety of the Debtor's identification of certain real property as exempt homestead property under Texas law.

On March 22, 2019 (the "**Petition Date**"), the Debtor initiated the case with the filing of his voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. On the

---

[*] Amended pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(a) for the sole purpose of correcting the name of the Debtor.

same date as the filing, the Debtor filed his Schedules of Assets and Liabilities (the "**Schedules**"), including Schedule A/B, wherein he disclosed an ownership interest in two contiguous tracts of real property and improvements thereon located at 9210 Miles Road (the "**9210 Property**") and 9214 Miles Road (the "**9214 Property**" and together with the 9210 Property, the "**Properties**") in Rowlett, Dallas County, Texas;[1] and Schedule C, wherein he claimed the Properties as exempt homestead property under applicable exemption provisions of the Texas Constitution and Texas Property Code.[2]

On July 17, 2019, the Trustee filed the *Trustee's Objection to Exemptions* [Docket No. 24] (the "**Exemptions Objection**") to object to the exemption claim. The Debtor timely filed his response in opposition to the Exemptions Objection on August 2, 2019.[3] The Trustee thereafter filed her *Motion for Summary Judgment on Objection to Exemptions* [Docket No. 65] (the "**Motion**"), wherein she has requested entry of summary judgment on two of the exemption challenges included within the Exemptions Objection. The Motion is supported by the Trustee's *Brief in Support*.[4] In response to the Motion, the Debtor has filed the *Debtor's Response in Opposition*,[5] the *Debtor's Brief in Opposition*[6] and the *Debtor's Supplemental Response in Opposition*,[7] to which the Trustee has filed her *Reply*.[8]

---

[1] *See* Docket No. 16, at p.1 (line 1.1). The original of Docket No. 16 was filed as part of Docket No. 1 but was replaced by Docket No. 16 after entry of a protective order to prevent the disclosure of certain sensitive, unrelated information within Docket No. 1.

[2] *See* Docket No. 1, at p.17 (line 2).

[3] Docket No. 34 (the "**Debtor's Objection Response**").

[4] Docket No. 66 (the "**Trustee's Brief**") (the sequentially numbered pages of the exhibits attached thereto are referred to as "**Trustee's Appx. [page number]**").

[5] Docket No. 67 (the "**Debtor's Response**").

[6] Docket No. 68 (the "**Debtor's Brief**").

[7] Docket No. 74 (the "**Debtor's Supplement**").

[8] Docket No. 69 (the "**Trustee's Reply**").

On February 11, 2020, the Court conducted a hearing on the Motion to entertain arguments of counsel. Having now considered the Exemptions Objection, the Debtor's Objection Response, the Motion, the Debtor's Response and Supplement in Opposition to the Motion, the Trustee's Reply, the parties' respective summary judgment briefing and evidentiary submissions, and the arguments of counsel, the Court will grant the Motion in part, and deny the Motion in part, for the reasons set forth herein.

### *JURISDICTION*

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Miscellaneous Rule No. 33)* of the United States District Court for the Northern District of Texas. Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409. The proceeding constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

### *FACTUAL BACKGROUND*

*A.    The Properties*

The 9210 Property is comprised of one acre of land.[9] The 9214 Property, which is adjacent to the 9210 Property, is comprised of 45.86 acres of land.[10] Both of the Properties are located within the City of Rowlett, Texas.[11]

As of the Petition Date, both Properties were served by police and fire protection[12] and both Properties received electric and water service from the City of Rowlett or under a contract

---

[9] *See* Trustee's Appx. 46-47.

[10] *See id*. at 50-52.

[11] *Id*. at 2 (¶ 4) and 7 (¶ 4).

[12] *See id*. at 45 (¶ 3) and 69-70.

with the City.[13] As for natural gas service, however, the parties have presented conflicting evidence with respect to whether the Properties received such service as of the Petition Date. In this regard, the Trustee points to the City of Rowlett's informational webpage on utilities available to residents of the City, including natural gas through Atmos Energy.[14] The Debtor, on the other hand, has presented the deposition testimony of a representative of Atmos Energy calling into question whether such service was specifically available to the Properties as of the Petition Date.[15]

### B.    *The Debtor's Acquisition of Interests in the Properties*

Prior to May 2011, the 9210 Property was owned by the Debtor's mother, Patsy Nichols ("**Mrs. Nichols**"). Mrs. Nichols resided at the 9210 Property along with her husband (the Debtor's stepfather), W.N. (Butch) Nichols ("**Mr. Nichols**").[16]

In May 2011, Mrs. Nichols passed away.[17] Under her will, which was probated in Cause No. PR-11-1953-1 in Probate Court No. One, Dallas County, Texas, the 9210 Property was bequeathed to the Debtor, her sole heir.[18] Under applicable provisions of the Texas Probate Code,[19] Mr. Nichols asserted a right to continuing occupancy of the property;[20] hence, the Debtor agreed to the assignment of a life estate in the property to Mr. Nichols in connection with the probation of his mother's estate.[21] Accordingly, on October 26, 2011, Mr. Nichols and the Debtor,

---

[13] *See id*. at 8 (¶ 19) and 28-29 (Debtor's acknowledgment of electric service); *see also id.* at 29 and 39 (¶ 4) (water service provided under contract with North Texas Municipal Water District).

[14] *See* Trustee's Brief, ¶ 9 & n.21 (providing reference to https://www.ci.rowlett.tx.us/975/Utilities-in-Rowlett).

[15] *See* Debtor's Supplement, Exh. 2 (responses to deposition upon written questions).

[16] Trustee's Appx. 21.

[17] *Id*.

[18] *See id*. at 19-21; Debtor's Brief (attached Declaration of Matthew Guy Landgraf (the "**Landgraf Dec**."), ¶ 4).

[19] *See, e.g.*, Tex. Estates Code § 102.002 (2014) (formerly Tex. Prob. Code § 282) ("The homestead rights and the respective interests of the surviving spouse and children of a decedent are the same whether the homestead was the decedent's separate property or was community property between the surviving spouse and the decedent.").

[20] *See* Trustee's Appx. 67.

[21] *See id.* at 28.

as the co-independent executors of Mrs. Nichols' estate, executed a Warranty Deed (the "**9210 Property Deed**") to convey a life estate in the 9210 Property to Mr. Nichols and a fee simple remainder interest in the property to the Debtor. The deed was recorded in the Dallas County property records on November 9, 2011.[22]

Prior to September 2011, the 9214 Property was owned by the Debtor's grandmother, Daisy McCallum ("**Mrs. McCallum**"), and Mrs. McCallum resided at the 9214 Property.[23] In September 2011, Mrs. McCollum passed away.[24] Under her will, which was probated in Cause No. PR-11-3419-1 in Probate Court No. One, Dallas County, Texas, the 9214 Property was bequeathed to Mrs. Nichols, her sole heir. Because Mrs. Nichols had predeceased Mrs. McCallum, however, and because the Debtor was the sole heir under Mrs. Nichols' will, the 9214 Property became distributable to the Debtor through Mrs. Nichols' estate.[25] Accordingly, on November 11, 2011, the Debtor, as the independent executor of the estate of Mrs. McCallum, executed a Warranty Deed to convey the 9214 Property to the Debtor. The deed was recorded in the Dallas County property records on November 11, 2011.[26]

C. *Use of the Properties After the Transfers*

As of the dates of the Debtor's inheritance of each of the Properties, the Debtor was living in an apartment in Wylie, Texas.[27] Thus, neither of the Properties constituted the Debtor's homestead property at the time.[28]

---

[22] *See id.* at 46-49.

[23] *Id*. at 21.

[24] *Id*. at 20.

[25] *See id*. at 20-21; Debtor's Brief (Landgraf Dec., ¶ 4).

[26] *See* Trustee's Appx. 50-54.

[27] *See id*. at 26.

[28] *Id*. at 2 (¶ 5) and 7 (¶ 5).

In the case of the 9210 Property, since the date of execution of the 9210 Property Deed on October 26, 2011, Mr. Nichols has continuously resided at the 9210 Property.[29] At no time prior to the Petition Date did the Debtor ever reside at or otherwise occupy the 9210 Property as his residence.[30] And at no time prior to the Petition Date did the Debtor ever record an executed homestead declaration to declare the 9210 Property as his homestead property.[31]

Similarly, in the case of the 9214 Property, following transfer of the 9214 Property to the Debtor in November 2011, the Debtor did not move to the 9214 Property. Instead, he continued to reside at his apartment in Wylie, Texas.

In March 2012, the Debtor was arrested on felony pornography charges.[32] At the time of the arrest, the Debtor was still living in the Wylie apartment.[33] In June 2012, upon obtaining his pretrial release from custody, however, the Debtor moved to the 9214 Property.[34] Additionally, between the date of the Debtor's arrest and the date of the Debtor's release from custody, the Debtor's best friend moved all of the Debtor's personal property from the Wylie apartment to the 9214 Property.[35] Thus, beginning in June 2012, the Debtor resided at the 9214 Property.

Ultimately, the Debtor pled guilty to various charges of producing child pornography and on November 21, 2013, was sentenced to a prison term of 180 months to commence on January 21, 2014.[36] Until the commencement of the Debtor's prison sentence on January 21, 2014, the

---

[29] *See id.* at 39 (¶ 2).

[30] *Id.* at 39 (¶ 2).

[31] *Id.* at 2 (¶ 5) and 7 (¶ 5).

[32] *See id.* at 27; *see also id.* at 2 (¶ 6) and 7 (¶ 6).

[33] *Id.* at 27.

[34] *Id.*

[35] *See id.* at 28.

[36] *Id.* at 2 (¶ 6) and 7 (¶ 6).

Debtor continuously resided at the 9214 Property.[37] On January 21, 2014, the Debtor surrendered to authorities to commence his prison term.[38]

As a result of the prison sentence, as of the Petition Date on March 22, 2019, the Debtor did not reside at the 9214 Property.[39] While at no time prior to the Petition Date did the Debtor ever record an executed homestead declaration to declare the 9214 Property as his homestead property,[40] the Debtor has submitted his declaration testimony that he always intended, and continues to intend, to move back to the 9214 Property once his prison sentence is fully served or otherwise commuted.[41]

That said, on or about April 2, 2014, shortly after the commencement of the Debtor's prison term, the Debtor created the Landgraf Revocable Trust (the "**Trust**"), a self-settled trust under which the Debtor is both the settlor and the beneficiary.[42] Pursuant to the Trust agreement, Kevin M. Ross is trustee of the Trust (in such capacity, the "**Landgraf Trustee**").[43] On August 26, 2014, prior to the Petition Date, the Debtor executed a Special Warranty Deed to transfer the 9214 Property to the Landgraf Trustee for the benefit of the Trust. The deed was recorded in the Dallas County property records on September 2, 2014.[44]

Similarly, on August 26, 2014, the Debtor executed a Special Warranty Deed to transfer his interest in the 9210 Property to the Landgraf Trustee for the benefit of the Trust, subject to the

---

[37] *Id*.

[38] *See id*. at 27.

[39] *See id*. at 2 (¶ 6) and 7 (¶ 6).

[40] *Id*. at 2 (¶ 5) and 7 (¶ 5).

[41] *See* Debtor's Brief (Landgraf Dec., ¶ 11).

[42] Trustee's Appx. 3 (¶ 7) and 7 (¶ 7).

[43] Debtor's Brief (Landgraf Dec., ¶ 12).

[44] *See* Trustee's Appx. 55-62.

life estate in the property held by Mr. Nichols, and the deed was recorded in the Dallas County property records on September 2, 2014.[45]

According to the Debtor, he set up the Trust and transferred his interest in the Properties to the Landgraf Trustee so that the Landgraf Trustee could more easily administer the properties while the Debtor served out his prison sentence.[46]

### D. The Debtor Claims the Properties as Exempt Homestead Property Under Texas Law and the Trustee Objects

Pursuant to Schedule C of the Debtor's Schedules, the Debtor has elected application of the Texas state exemptions in his bankruptcy case pursuant to 11 U.S.C. § 522(b)(3).[47] Predicated upon such election, the Debtor has claimed both Properties as his exempt rural homestead property under Texas law.[48] Pursuant to the Exemptions Objection, the Trustee asserts the following three challenges to the Debtor's homestead claim:

> (1) Neither of the Properties qualify as homestead property under Texas law because the Debtor did not use or occupy either of the Properties as his homestead property as of the Petition Date.
>
> (2) Alternatively, the Debtor's exemption claim is limited by section 522(o) of the Bankruptcy Code because the Debtor allegedly transferred the Properties to the Landgraf Trustee with the intent to hinder, delay or defraud his existing creditors.
>
> (3) Even if the Properties constitute homestead property, they only constitute *urban* as opposed to *rural* properties for Texas homestead purposes and, thus, the homestead exemption claim must be capped at the acreage limitation applicable to *urban* homestead rights under Texas law.[49]

The Debtor disputes all three bases of objection.[50]

---

[45] *See id.* at 63-68.

[46] *See* Debtor's Brief (Landgraf Dec., ¶ 12).

[47] Trustee's Appx. 2 (¶ 3) and 7 (¶ 3).

[48] *See* Docket No. 1, at p.17 (line 2); Trustee's Appx. 8-9.

[49] *See* Exemptions Objection.

[50] *See* Docket No. 34.

Pursuant to the Motion, the Trustee requests summary judgment with respect to the first and last of the three challenges outlined above.

## DISCUSSION

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56, which is made applicable to this proceeding pursuant to Federal Rules of Bankruptcy Procedure 7056 and 9014, provides that a court shall grant summary judgment on a claim or defense (or a part thereof) identified by the movant for such relief "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51] Based upon the language of Rule 56, in considering a motion for summary judgment a court must (a) determine whether a dispute exists with respect to a *material* fact involving the claim or defense (or part thereof); (b) determine whether the dispute is *genuine*; and (c) if the movant has successfully established the absence of a genuine dispute as to any material fact, determine whether the movant is entitled to judgment as a matter of law.

A fact is *material* to a claim or defense if its resolution can affect the outcome of the action under the governing law.[52] "Factual disputes that are irrelevant or unnecessary will not be counted."[53] A factual dispute is *genuine* only if the evidence is such that a reasonable factfinder could return a verdict or ruling for the nonmoving party.[54] Finally, the moving party must also substantiate the legal basis for the relief requested based upon the uncontested summary judgment

---

[51] Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 and 9014(c).

[52] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[53] *Liberty Lobby*, 477 U.S. at 248; *Topalian v. Ehrman*, 954 F.2d 1125, 1132 n.12 (5th Cir.) ("A grant of summary judgment is not precluded by a dispute as to [an] immaterial fact"), *cert. denied*, 506 U.S. 825 (1992).

[54] *Liberty Lobby*, 477 U.S. at 248.

evidence. The non-existence of a genuine dispute as to any material fact is of no moment if the movant is unable to substantiate a legal basis for the underlying relief sought.

The party seeking summary judgment "bears the initial responsibility of informing the [ ] court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[55] Once the moving party has satisfied this initial burden, the non-movant must show with "significant probative evidence" that a genuine issue of material fact exists.[56] In doing so, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."[57] "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment."[58]

In considering such matters, it is also important remember that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[59] Consequently, this means that "the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party."[60] Stated another way, "[i]n reviewing the evidence, the court must disregard all evidence favorable to the moving party that the [factfinder] is not required to believe, and

---

[55] *Celetox Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1).

[56] *Hamilton*, 232 F.3d at 477.

[57] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[58] *Topalian*, 954 F.2d at 1131.

[59] *Liberty Lobby*, 477 U.S. at 249 (emphasis added); *see also Plyant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007); *United States v. An Article of Food Consisting of 345/50-Pound Bags*, 622 F.2d 768, 773 (5th Cir. 1980).

[60] *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007), *cert. denied*, 552 U.S. 1166 (2008); *see also Matsushita Elec. Indus.*, 475 U.S. at 587.

should give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached."[61] Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[62]

Finally, in analyzing the entitlement to judgment as a matter of law, under Texas law, a homestead claimant bears the initial burden of establishing the homestead status of property.[63] In the context of bankruptcy, a debtor effectively satisfies this initial burden by identifying in Schedule C of the Schedules the property claimed as exempt and the source of authority for the claimed exemption, attesting to the truthfulness of such information in signing the Schedules under penalty of perjury. Thus, the burden is on the objecting party to prove that the debtor's asserted exemptions are not properly claimed.[64]

### B. The Trustee's Challenge to the Homestead Character of the Properties

#### 1. The Texas Homestead Exemption

In Texas, homestead property is exempt from most types of creditor claims. Not only is it statutorily protected, it is also protected under the Texas Constitution. As described by the Fifth Circuit, "[h]omesteads are favorites of the law, and are liberally construed by Texas courts."[65]

---

[61] *Peel & Co., Inc. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001).

[62] *Matsushita Elec. Indus.*, 475 U.S. at 587.

[63] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2013) (citing *Burk Royalty Co. v. Riley*, 475 S.W.2d 566, 568 (Tex. 1972)).

[64] Fed. R. Bankr. P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed").

[65] *Perry*, 345 F.3d at 316.

Neither the Texas Constitution nor the Texas Property Code clearly defines what is meant by "homestead."[66] In the case law, however, it has generally been described as "the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith."[67] For purposes of the foregoing quote, a "family residence" may include the residence of a single adult.[68]

The existence of a valid homestead claim to property requires evidence of: (1) overt acts of homestead usage of the property; and (2) the claimant's intention to claim the property as a homestead.[69] Courts have also required a homestead claimant to hold a present possessory interest in the property. "[O]ne who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property."[70]

Once homestead rights in property are established, such homestead rights may only be lost by death, abandonment or alienation.[71] "[T]o abandon a homestead a party must forsake and leave it with the intent never to return to it again as a homestead."[72] Alienation occurs when title to the

---

[66] *See Norris v. Thomas*, 215 S.W.3d 851, 853 (Tex. 2007) ("Neither the Texas Constitution nor the Property Code defines 'homestead' with specificity").

[67] *Resolution Trust Corp. v. Olivarez*, 29 F.3d 201, 204 (5th Cir. 1994) (quoting *Lifemark Corp. v. Merrit*, 655 S.W.2d 310, 314 (Tex. App. – Houston [14th Dist.] 1983, writ ref'd n.r.e.)). Homestead property may be used both as the family residence and as a place of business. *See, e.g.,* Tex. Const. art. XVI, § 51 ("the homestead in a city, town or village shall be used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant"); Tex. Prop. Code § 41.002(a) (referring to use of property as home or both a home and a place to exercise a calling or business); *Rock Island Plow Co. v. Alten*, 116 S.W. 1144, 1145 (Tex. 1909) (describing homestead as "embrac[ing] the family residence or home as well as a place of business of the head of the family").

[68] *See* Tex. Const. art. XVI, § 50(a) (referring to the "homestead of a family, *or of a single adult person*") (emphasis added); Tex. Prop. Code § 41.002(a) (similarly referring to the "homestead of a family *or a single, adult person*") (emphasis added).

[69] *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 159 (Tex. 2015); *see also Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 223 n.9 (5th Cir. 2008).

[70] *Laster v. First Huntsville Props. Co*., 826 S.W.2d 125, 130 (Tex. 1991).

[71] *Perry*, 345 F.3d at 310; *Paull & Partners Invests., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. – Houston [14th Dist.] 2018, no pet.); *Duran v. Henderson*, 71 S.W.3d 833, 842 (Tex. App. – Texarkana 2002, pet. denied).

[72] *McMillan v. Warner*, 38 Tex. 410, 414 (1873); *see also Drake Interiors, Inc. v. Thomas*, 544 S.W.3d 449, 455 (Tex. App. – Houston [14th Dist.] 2018, no pet.).

property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property.[73] In the latter case, at least one exception exists – if the homestead claimant, without abandoning his or her homestead rights in the homestead property, transfers the property to a "qualifying trust" as defined in section 41.0021 of the Texas Property Code, then the homestead rights may be preserved.[74]

Specifically, section 41.0021 of the Texas Property Code provides that "[p]roperty that a settlor or beneficiary occupies and uses in a manner described by this subchapter [*i.e.* the subchapter governing exemptions in land] and in which the settlor or beneficiary owns a beneficial interest through a qualifying trust is considered the homestead of the settlor or beneficiary under Section 50, Article XVI, Texas Constitution, and Section 41.001."[75] For purposes of section 41.0021, a "qualifying trust" is defined as an express trust:

> (1) in which the instrument or court order creating the express trust provides that a settlor or beneficiary of the trust has the right to:
>
>> (A) revoke the trust without the consent of another person;
>>
>> (B) exercise an inter vivos general power of appointment over the property that qualifies for the homestead exemption; or
>>
>> (C) use and occupy the residential property as the settlor's or beneficiary's principal residence at no cost to the settlor or beneficiary, other than payment of taxes and other costs and expenses specified in the instrument or court order:
>>
>>> (i) for the life of the settlor or beneficiary;
>>>
>>> (ii) for the shorter of the life of the settlor or beneficiary or a term of years specified in the instrument or court order; or
>>>
>>> (iii) until the date the trust is revoked or terminated by an instrument or court order recorded in the real property records of the county in which the property is located and that describes the property with sufficient certainty to identify the property; and

---

[73] *Perry*, 345 F.3d at 310 n.8; *Berry*, 558 S.W.3d at 809 n.4.

[74] *See In re Cyr*, 605 B.R. 784, 798 (Bankr. W.D. Tex. 2019) ("when a homestead is transferred to a living trust, that homestead does not lose its exempt status and remains protected from the claims of creditors if the homestead is transferred to a qualifying trust").

[75] Tex. Prop. Code § 41.0021(b).

(2) the trustee of which acquires the property in an instrument of title or under a court order that:

(A) describes the property with sufficient certainty to identify the property and the interest acquired; and

(B) is recorded in the real property records of the county in which the property is located.

Tex. Prop. Code § 41.0021(a).

### 2. The Trustee's Challenge to the Homestead Designation Based Upon Lack of Ownership and Occupancy on the Petition Date

In bankruptcy, the existence of a valid homestead right is to be determined by the facts and law as they exist on the date of the filing of the bankruptcy petition. This is commonly referred to as the "snapshot rule."[76] Thus, based upon the snapshot rule, the Trustee challenges the homestead character of the Properties on the basis that the Debtor did not own or occupy either of the Properties as his homestead property as of the Petition Date.

In response, the Debtor asserts that he established homestead rights in the Properties beginning in 2012 when he moved to the 9214 Property following his pretrial release from prison; that he never abandoned his homestead rights thereafter, having only temporarily given up occupancy of the Properties to serve out his prison sentence with the intent to return to the Properties once released from prison; and that he did not alienate his homestead interest in either of the Properties by virtue of his transfer of ownership of the Properties to the Landgraf Trustee because the Trust constitutes a "qualifying trust" under section 41.0021 of the Texas Property Code. At a minimum, according to the Debtor, he has presented sufficient summary judgment evidence to establish the existence of disputed issues of material fact precluding summary judgment.

---

[76] See Cyr, 605 B.R. at 794 (citing White v. Stump, 266 U.S. 310, 313 (1924)).

With the foregoing arguments in mind and upon consideration of the summary judgment record, in the case of the 9210 Property the undisputed summary judgment evidence presented by the Trustee is that (1) at no time prior to the Petition Date did the Debtor ever reside at or otherwise occupy the 9210 Property as his residence; (2) at no time prior to the Petition Date did the Debtor ever record an executed homestead declaration to declare the 9210 Property as his homestead property; and (3) at no time has the Debtor ever owned a present possessory interest in the 9210 Property – his interest, instead, being limited to a fee simple remainder interest subject to the life estate of Mr. Nichols. The Debtor's only counterargument to such evidence appears to be that, because the 9210 Property and the 9214 Property (where he actually resided for a period of time) are contiguous tracts of real property, then they should be treated as a single tract of property for homestead purposes.

In support of such argument, the Debtor cites *In re Perry*, 267 B.R. 759 (Bankr. W.D. Tex. 2001), *aff'd in part and rev'd in part*, 289 B.R. 860 (W.D. Tex. 2002), *vacated and remanded*, 345 F.3d 303 (5th Cir. 2003), arguing that *Perry* stands for the proposition that "Texas law does not favor severance of a single contiguous tract of land into homestead and non-homestead sections."[77] The Debtor's reliance upon this proposition, however, is misplaced. The anti-severance principle highlighted by the Debtor comes from decisions that have addressed the treatment of a rural homestead spanning two separate tracts of land – specifically, whether a tract of rural property that is only partially used for homestead business purposes and that is contiguous to the tract of rural property on which the homestead residence is located may be severed into homestead and non-homestead sections based upon the bifurcated usage. In these instances, the case law has generally disfavored any sort of severance of the adjacent tract of land into homestead and non-homestead

---

[77] Debtor's Brief, ¶ 20 (citing *Perry*, 267 B.R. at 768).

sections based upon the less-than-complete usage of the property for homestead business purposes.[78]

Here, however, the Trustee is not proposing to sever the 9210 Property into homestead and non-homestead sections. Instead, the Trustee's argument is simply that the Debtor never established *any* homestead exemption rights in the 9210 Property. The Court agrees. Not only has the Debtor never held a present, possessory interest in the 9210 Property,[79] but there is no evidence of any overt acts of homestead usage of the property by the Debtor prior to the Petition Date. For these reasons, the Court will grant the Trustee's Motion to the extent of the Exemptions Objection's focus on the 9210 Property.

Turning next to the 9214 Property, the landscape is considerably more complex. As to the 9214 Property, the Debtor has presented summary judgment evidence with respect to both his usage of the property as his homestead property prior to the commencement of his prison sentence and of his intention to return to the property upon his release from prison, with the homestead property rights to be maintained and preserved until such time. Of note, "[a] homestead claimant is not required to remain on the premises at all times, and he does not necessarily lose, forfeit or abandon his homestead rights merely by removing or being absent from the premises when the

---

[78] Of note, the dispute in *Perry* did not directly involve this issue. Instead, as framed by the *Perry* court, the issue was whether the debtors could simply "tape the [two] contiguous … tracts together" so as to enable the debtors to apply their undisputed rural homestead right as to one of the tracts to the other tract as well. *See Perry*, 267 B.R. at 768. In framing the issue in that way, the *Perry* court cited *Bradley v. Pacific S.W. Bank, FSB (In re Bradley)*, 960 F.2d 502, 508-09 (5th Cir. 1992), *cert. denied*, 507 U.S. 971 (1993), for the non-severance principle noted above. *Bradley*, in turn, explains that a homestead claimant's reservation of a portion of his adjacent acreage undisputedly used for homestead business purposes for future development (*i.e.* non-homestead usage) did not support severance of the acreage into homestead and non-homestead sections. *See also Youngblood v. Youngblood*, 76 S.W.2d 759, 760 (Tex. Comm'n App. 1934, judgm't adopted) (favoring treatment of contiguous rural lots used as homestead property as "united in one homestead," but also emphasizing that "[i]t is … the actual use of the additional land that controls our conclusion.").

[79] *See* 9210 Property Deed.

absence is temporary."[80]  Thus, at a minimum, material questions of fact exist with respect to whether the Debtor ever validly established any homestead exemption rights in the 9214 Property, and if so, whether he intended to abandon or alienate those rights prior to the Petition Date.

In fact, the real point of contention between the parties concerns the impact of the Debtor's transfer of the 9214 Property to the Landgraf Trustee for the benefit of the Trust – specifically, whether the transfer constituted an abandonment or alienation of any homestead rights the Debtor validly possessed, or whether the transfer constituted a transfer to a "qualifying trust" under section 41.0021 of the Texas Property Code subject to the Debtor's retention of such homestead rights.

The Debtor's position is that he transferred the 9214 Property to the Landgraf Trustee to facilitate maintenance of the property during his prison term; that he has presented sufficient summary judgment evidence to substantiate the lack of any intention to abandon his homestead rights in the property on account of the transfer; and that his retention of homestead rights post-transfer must be evaluated under the same standards otherwise applicable to the abandonment of homestead rights.  While the Trustee concedes that section 41.0021 of the Texas Property Code permits the assertion of homestead rights in property held in a "qualifying trust" by a settlor or beneficiary of the trust, she asserts that in order to validly claim such homestead exemption rights, the settlor or beneficiary must *contemporaneously* both (1) occupy and (2) use the property as homestead property.[81]  The Trustee reasons that the requirement of contemporaneous occupancy and use of the property is expressly provided for in the following introductory language of section 41.0021(b): "Property that a settlor or beneficiary *occupies and uses* in a manner described by this

---

[80] *Coury v. Prot*, 85 F.3d 244, 253 (5th Cir. 1996); *see also Driver v. Conley*, 320 S.W.3d 516, 519 (Tex. App. – Texarkana 2010, pet. denied) ("While [the homestead claimant] voluntarily committed the crime, he did not voluntarily change his residence.  A homestead is not abandoned merely because a person does not occupy the home during a prison sentence") (citing *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App. – Austin 2006, pet. denied)), *cert. denied*, 562 U.S. 1287 (2011).

[81] *See* Trustee's Brief, ¶ 21.

subchapter….”[82]  In fact, at oral argument, Trustee's counsel suggested that *any* lapse in the settlor's/beneficiary's occupancy and use of the property will cause the property to immediately lose its homestead character.  The Court disagrees.

Importantly, section 41.0021(b)'s focus is on the *manner* of the occupancy and use of the property, and whether such manner comports with the manner *described by this subchapter* (referring to the subchapter on exemptions in land).  In other words, section 41.0021(b) simply provides that a settlor's/beneficiary's homestead rights are to be evaluated in the same way that any other homestead claimant's rights are to be evaluated under the Texas homestead provisions and case law principles that have been developed in relation thereto.  Section 41.0021(b) does not establish a new, different set of occupancy and use rules applicable only to settlors and beneficiaries of qualifying trusts.  Had the Texas Legislature intended as much, it would have clearly articulated the same instead of including a general use and occupancy cross-reference to the entirety of the subchapter on exemptions in land.[83]

Thus, with the proper analytical parameters now in place, it is clear that the Debtor has presented sufficient summary judgment evidence to establish the existence of a genuine factual dispute with respect to whether the Debtor, by transferring the 9214 Property, intended to abandon or alienate any homestead rights that he validly possessed in the 9214 Property prior to the Petition Date.  For these reasons, the Court will deny the Trustee's Motion to the extent of the Exemptions Objection's focus on the 9214 Property as non-homestead property.

---

[82] Tex. Prop. Code § 41.0021(b) (emphasis added).

[83] *See Cedena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325-26 (Tex. 2016 ("We presume the [Texas] Legislature 'chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen'") (quoting *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

### C. The Trustee's Alternative Challenge to Designation of the 9214 Property As Rural Homestead Property

Finally, turning to the Trustee's alternative challenge to the extent of the Debtor's exemption claim, in Texas, the scope of the homestead exemption is measured by acreage as opposed to value, and Texas law bifurcates homestead property into either rural homestead property or urban homestead property. In the case of rural property, for a single, adult person,[84] the homestead exemption is capped at 100 acres.[85] In the case of urban property, on the other hand, the homestead exemption is limited to a maximum of 10 acres.[86] Thus, the Trustee seeks to cap the Debtor's homestead exemption, if allowed, to 10 acres instead of the nearly 47 acres claimed.

"A homestead is considered to be urban if, at the time the designation is made, the property is (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality: (A) electric; (B) natural gas; (C) sewer; (D) storm sewer; and (E) water."[87]

With respect to the rural versus urban distinction, the parties' sole dispute appears to center on whether the 9214 Property was served by at least 3 of the 5 above-referenced public utility services as of the Petition Date. The Trustee has presented undisputed summary judgment evidence with respect to electrical and water service. With respect to the Trustee's presented evidence of natural gas service, however, the Debtor has presented conflicting summary judgment

---

[84] As of the Petition Date, the Debtor was single. *See* Trustee's Appx. 24-25.

[85] Tex. Prop. Code § 41.002(b)(2).

[86] *Id.* § 41.002(a).

[87] *Id.* § 41.002(c).

evidence. Therefore, because a genuine factual dispute exists with respect to whether the 9214 Property was served by at least 3 of the 5 above-referenced public utility services as of the Petition Date – and, thus, whether the property constituted rural or urban property as of the Petition Date for homestead exemption purposes – the Court will also deny the Trustee's Motion to the extent of the Exemptions Objection's alternative focus on the character of the exemption claim to the 9214 Property.

## *CONCLUSION*

Based upon the foregoing, the Court finds that with respect to the 9210 Property, no genuine dispute of material fact has been raised with respect to the Exemptions Objection and that, based upon the undisputed summary judgment evidence presented, the Trustee is entitled to judgment as a matter of law on her objection to the Debtor's claim to the 9210 Property as exempt homestead property. In all other respects, however, the Court finds that genuine issues of material fact exist precluding the grant of summary judgment.

## ORDER

Accordingly, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that the Motion be and is hereby granted in part, and denied in part, as follows:

1. The Motion be and is granted, and the Exemptions Objection is hereby sustained, to the extent of the Trustee's objection to the Debtor's designation of the 9210 Property as exempt homestead property. The Debtor's interest in the 9210 Property shall be administered by the Trustee in this bankruptcy case as non-exempt property.

2. Except as provided above, the Motion be and is denied.

### END OF AMENDED MEMORANDUM OPINION AND ORDER ###